# EXHIBIT 1

Adam Gonnelli, Esq. (*pro hac vice application pending*)
**THE SULTZER LAW GROUP P.C.**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Telephone (845) 483-7100
Fax (888) 749-7747
Gonnellia@thesultzerlawgroup.com

Brent R. Baker (#5247)
Christopher B. Snow (#8858)
**CLYDE SNOW & SESSIONS**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone (801) 322-2516
Fax (801) 521-6280
brb@clydesnow.com
cbs@clydesnow.com

*Attorneys for Plaintiff*

Server  RS
Date  8/16/19  Time  :  M
P/S  Seagull Legal
ANDERSON INVESTIGATIONS, INC  #P101391
P.O. BOX 535, SLC, UT 84110   877-619-1110

# IN THE THIRD JUDICIAL DISTRICT COURT FOR

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BRIAN BAKER, on behalf of himself and all other similarly situated, | **SUMMONS** |
| Plaintiff. | |
| v. | Civil No. 190906369 |
| COMCAST CORPORATION, | Judge Barry Lawrence |
| Defendants. | |

THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT:

**Comcast Corporation**
**1701 JFK Boulevard**
**Philadelphia, PA 19103**

You are hereby summoned and required to file an Answer in writing to the attached

Complaint ("Complaint") with the Clerk of the above-entitled Court, 450 South State Street, P.O.

Box 1860, Salt Lake City, UT 84114-1860 and to serve upon, or mail to Brent B. Baker and

1

Christopher B. Snow, Plaintiff's attorneys, 201 South Main Street, #1300, Salt Lake City, Utah 84111-2216, a copy of said Answer, within twenty-one (21) days after service of this Summons upon you.

If you fail so to do, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Clerk of said Court and a copy of which is hereto annexed and herewith served upon you.

Dated this 14th day of August, 2019.

Brent Baker, Esq.
Christopher B. Snow, Esq.

/s/ Christopher B. Snow
**Clyde Snow, P.C.**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Tel: 801 433 2427
brb@clydesnow.com
cbs@clydesnow.com

Adam Gonnelli, Esq.
**The Sultzer Law Group P.C.**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Tel: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com

Adam Gonnelli, Esq. *(pro hac vice application pending)*
**THE SULTZER LAW GROUP P.C.**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Telephone (845) 483-7100
Fax (888) 749-7747
Gonnellia@thesultzerlawgroup.com

Brent R. Baker (#5247)
Christopher B. Snow (#8858)
**CLYDE SNOW & SESSIONS**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2216
Telephone (801) 322-2516
Fax (801) 521-6280
brb@clydesnow.com
cbs@clydesnow.com

*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT FOR

## SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| BRIAN BAKER, on behalf of himself and all other similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| v. | Civil No. _____ |
| COMCAST CORPORATION, | Judge _____ |
| Defendants. | |

### INTRODUCTION

1. Comcast Corporation offered certain Utah consumers a monthly "lifetime" rate for its cable, internet and voice services.

2. However, in the past few years Comcast began to renege on these contracts and increased the rates it charged to consumers, breaching these contracts.

3. Plaintiff Mr. Baker, on behalf of his fellow consumers, brings an action for breach

1

of contract and seeks monetary damages and injunctive relief in the form of specific performance.

## PARTIES

4. Plaintiff Brian Baker is a resident of Utah.

5. Defendant Comcast Corporation ("Comcast") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Comcast does business as "Xfinity" and provides cable, voice and internet services under that name throughout the State of Utah.

6. This case is Discovery Tier 3 for purposes of Utah Rule of Civil Procedure 26.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this case pursuant to Utah Code 78A-5-102.

8. Venue is proper in this County pursuant to Utah Code 78B-3-307.

## SUBSTANTIVE ALLEGATIONS

9. In 2016, Comcast was under intense competitive pressure from Google's high speed fiber-optic data service. Google began an aggressive and public marketing campaign in each of its identified "Google Fiber cities." Salt Lake City was named as a Google Fiber city. Google Fiber expanded neighborhood by neighborhood in each of the Google Fiber cities, including Salt Lake City, by sending out teams of door-to-door salespeople to sign customers up in a particular neighborhood. When initially announced by Google, the Google Fiber cities included, but were not limited to, Atlanta, Austin, Boston, Charlotte, Chicago, Dallas, Denver, Huntsville, Jacksonville, Kansas City, Los Angeles, Louisville, Miami, Nashville, Oakland, Oklahoma City, Orange County, Phoenix, Portland, Provo, San Antonio, San Diego, San

Francisco, San Jose, Salt Lake City, Seattle, and Tampa.

10. In response to Google's marketing campaign, Comcast engaged extra sales staff to try to effectively beat the Google Fiber sales staff as they made their way up and down the streets of each neighborhood. To compete, Comcast sales staff began to offer "lifetime" contracts to some of its customers and sold Comcast's broadband services by using door to door salespeople, especially in cities and neighborhoods where Google was aggressively offering its fiber-optic service.

11. On information and belief, as many as 20% of Comcast's over 200,000 contracts in Utah may be "lifetime" contracts.

12. On July 11, 2016, Mr. Baker arrived home to find a two-sided document (the "Price List", attached as Exhibit A) describing Xfinity's available services and prices.

13. On the top of the Price List near the $120 price for the XFINITY Extreme Triple Play, the salesperson had written:

> "Brian, you are under a promotional program – scheduled to go up $60 to over $200 total…"…

and then, referencing the $120 price for the EXTREME Triple Play,

> "This should be your price – and this is not a promotional – this is a lifetime price."

14. At the bottom of the Price List the salesperson also wrote: "(these are not promotional prices – no yearly increases)" (emphasis in original.)

15. There was also the salesperson's name and phone number on the Price List.

16. Mr. Baker called the number and told the salesperson that he was interested in the lifetime offer.

17. The salesperson arrived at Mr. Baker's house later that day.

18. The salesperson explained that Mr. Baker's existing monthly price of $179.99 was scheduled to increase by $60.

19. The salesperson also explained that Xfinity knew that Google Fiber would soon be available to Mr. Baker, and that Xfinity wanted to make sure that Mr. Baker was happy with Xfinity.

20. The salesperson explained that Mr. Baker could sign up for the Xfinity "Extreme Triple Play" at a cost of $120 per month (plus a $10 per month charge for the cable box).

21. The Triple Play would be an improvement on Mr. Baker's current service and would include all premium channels, high speed internet, and a phone line.

22. The salesperson also emphasized that the Triple Play price was no mere short-term promotion, but was a "lifetime price."

23. Mr. Baker agreed to sign up for the Triple Play at the lifetime price of $120 per month.

24. In response the salesperson checked the appropriate boxes on the Service Order (attached as Exhibit B) and confirmed the components of the Triple Play with Mr. Baker as Mr. Baker reviewed the Price List.

25. Then the salesperson asked Mr. Baker to sign the Service Order where indicated.

26. Mr. Baker did so.

27. The salesperson did not review any other provisions in the Service Order with Mr. Baker or even show it to him except as was necessary to obtain Mr. Baker's signature.

28. The fine print above the Service Order's signature line states:

> I hereby affirm that the foregoing Customer Information is true and correct. I represent that I am 18 or older, and authorized to purchase these services, make

4

installation decisions, and change service. The services ordered are subject to the terms and conditions on this order, on the reverse side of this order, and in Comcast's Agreement for Residential Services terms as provided to me at installation or otherwise, which terms I accept by signing or by use of Comcast services...

29. The salesperson also scheduled installation of the new service and equipment.

30. A few days later, a Comcast technician returned to install equipment and activate the Triple Play services.

31. The technician did not provide, or even mention, Comcast's Agreement for Residential Services to Mr. Baker.

32. Comcast never provided Comcast's Agreement for Residential Services to Mr. Baker in any form.

33. Mr. Baker does not know if Comcast's Agreement for Residential Services at the time of his order or installation contained an arbitration clause or class action waiver.

34. On information and belief, Comcast's current Agreement for Residential Services contains an arbitration clause and class action waiver.

35. If Comcast's Agreement for Residential Services at the time of Mr. Baker's order or installation contained an arbitration clause or class action waiver, those clauses are null and void.

36. A few years later, Comcast began to renege on the "lifetime" contracts and increase prices throughout Utah. Many customers, upon seeing the substantial increase in monthly billing, contacted Comcast and were told by Comcast employees or representatives that Comcast's "lifetime" plan does not exist in spite of the previous representations by its sales staff and in spite of the numerous written contracts with the "lifetime" language prominently displayed.

37. In June of 2019, Comcast increased Mr. Baker's bill by $10 per month. Other customers have had their bill unilaterally increased as much as $50 per month over the specified "lifetime" rate.

## CLASS ACTION ALLEGATIONS

38. Pursuant to Utah Rule of Civil Procedure 23, Plaintiff brings this suit as representatives of a class of all individuals who, within the relevant statute of limitations periods, entered into a "lifetime" contract with Comcast on which Comcast reneged. All consumers whose "lifetime" contracts have been reneged upon have claims and causes of action which are legally and factually common with Plaintiff such that they are all similarly situated and Plaintiff can serve as an adequate class representative for these consumers.

39. Specifically excluded from the Class are the judge assigned to the case and members of their families within the first degree of consanguinity, and the officers, directors and counsel of record of Defendants.

40. Plaintiff reserves the right to amend or modify the definitions of the Class with greater specificity, further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

41. Members of the Class are so numerous that their individual joinder herein is impracticable. While the exact number of Class members is presently unknown, and can only be ascertained through appropriate discovery, Plaintiff believes the members of the Class number in the thousands.

42. Common questions of law and fact exist as to members of the Class and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

6

- whether Comcast entered into "lifetime" contracts with consumers;
- whether the lifetime contacts are valid;
- whether the proper measure of damages is the difference between the price in the "lifetime" contracts and the increased prices;
- whether increasing the price constitutes a breach of the "lifetime" contracts;
- the measure of other types of damages;
- whether Comcast should be enjoined to maintain lifetime prices; and
- whether Comcast breached its duty of good faith and fair dealing.

38. Plaintiff's claims are typical of the claims of Class because Plaintiff entered into a "lifetime" contract with Comcast which Comcast subsequently breached by increasing the price. Plaintiff's claims have the same essential characteristics as the claims of the members of the Class and are based on the course of conduct and similar legal theories. The members of the Class have suffered the same type of injury and possess the same interests as Plaintiff. A single resolution of these claims would be preferable to a multiplicity of similar actions.

39. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he has retained competent counsel experienced in prosecuting class actions, and intends to prosecute this action vigorously. The interests of Class will be fairly and adequately protected by Plaintiff and his counsel.

40. This suit is maintainable as a class action under Utah Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

41.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class. Individual members of the Class may lack the resources to undergo the burden and expense of individual prosecutions of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff knows of no existing litigation concerning the issues in this case, and concentration of claims in this forum is appropriate. In addition, there are no unusual difficulties inherent in the management of this case as a class action.

42.     This suit is maintainable as a class action under Utah Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class in its entirety.

43.     The members of the Class can be identified through Defendant's billing records.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
(On behalf of Plaintiff and the Class)

43.     Plaintiff reasserts and realleges all prior allegations as if fully set forth herein.

44.     On July 11, 2016 Plaintiff and Defendant entered into a contract providing that Plaintiff would pay $120 per month for Defendant's "Extreme Triple Play" services for life.

8

45. At all times Plaintiff satisfied his obligations under the contract.

46. In June of 2019, Defendant raised the monthly rate by $10.

47. Defendant's conduct constituted a material breach of the contract.

48. Plaintiff has been damaged by the breach in the amount equaling the difference between the supposed "lifetime" price and the new price for each month.

49. Plaintiff is also entitled to specific performance and Comcast should reinstate Mr. Baker's and the Class's monthly price to its amount before the breach.

50. Plaintiff requests a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself and the members of the Class, prays for relief as follows:

A. An Order certifying the proposed Class under Utah Rule of Civil Procedure 23;

B. An Order appointing Plaintiff as the Class representative and his counsel as Class counsel;

C. A Declaration that Comcast breached its "lifetime" contracts by increasing the monthly price;

D. An Order enjoining Comcast from increasing the price on other lifetime contracts and restoring the price to original levels for contracts it has breached;

E. An Order requiring Comcast to disseminate a disclosure and explanation to members of the Class;

F. An award of damages to Plaintiff and the Class;

G. An award of attorneys' fees, expenses and costs, as allowed by law or equity;

H. Leave to amend the pleadings to conform to the evidence presented at trial; and

I. Such Orders granting other relief as the Court deems appropriate.

Dated this 14th day of August, 2019.

Brent Baker, Esq.
Christopher B. Snow, Esq.

/s/ *Christopher B. Snow*
**Clyde Snow, P.C.**
201 South Main Street, Suite 1300
Salt Lake City, Utah 84111
Tel: 801 433 2427
brb@clydesnow.com
cbs@clydesnow.com

Adam Gonnelli, Esq.
**The Sultzer Law Group P.C.**
280 Highway 35, Suite 304
Red Bank, NJ 07701
Tel: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com