IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN BAKER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Case No. 2:19-cv-00652<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Brian Baker sued Comcast in state court for breach of contract on behalf of himself and a proposed class of Comcast subscribers. After removing the action to this court, Comcast moved to compel arbitration on an individual basis. The motion is granted.

I.

In December 2015, Mr. Baker contracted with Comcast for residential internet, cable, and phone services. *See* Dkt. No. 14-1 at 3 ¶ 8; Dkt. No. at 16-1 at 1 ¶ 3. On July 11, 2016, a Comcast salesperson offered Mr. Baker an upgraded package of services, called "XFINITY Extreme Triple Play," that included high-speed internet, a phone line, and access to all premium television channels. *See* Dkt. No. 2-2 at 7 ¶¶ 20–21 ("Compl."). As part of Comcast's strategy to compete with Google Fiber, a high-speed fiber-optic data service, the salesperson offered the package for a "lifetime price"—a monthly rate that would never increase. *Id*. ¶¶ 20–22. Mr. Baker accepted the offer, signing a "Service Order" that stated in part that "the services ordered are subject to the terms and conditions . . . in Comcast's Agreement for Residential Services terms as provided to me at installation or otherwise, which terms I accept by signing or by use of Comcast services." *Id*. at ¶¶ 23, 25, 28. Comcast's Agreement for Residential Services, also

known as the Subscriber Agreement, *see, e.g.*, Dkt. No. 14 at 3, includes a broadly worded arbitration clause requiring that legal disputes between the customer and Comcast be resolved through arbitration on an individual basis unless the customer opts out of this requirement within thirty days of signing. *See* Dkt. No. 20 at 61–62 § 13. Mr. Baker did not opt out. *See* Compl. ¶¶ 28, 36–37.

In June 2019, Comcast allegedly breached its "lifetime price" guarantee, increasing Mr. Baker's bill by ten dollars per month and increasing the bills of other customers who had purchased XFINITY Extreme Triple Play by as much as fifty dollars per month. *See* Compl. ¶ 37. Instead of seeking to resolve the matter through arbitration, Mr. Baker filed this putative class action against Comcast in state court. *See* Compl. ¶¶ 3, 28. Comcast removed the action to this court, *see* Dkt No. 2, then filed its motion seeking to compel Mr. Baker to arbitrate his claim on an individual, non-class basis, *see* Dkt. No. 14.

## II.

The Federal Arbitration Act permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek "an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Act reflects a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). It thus requires courts to "place arbitration agreements on equal footing with other contracts," *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002), and to "rigorously enforce arbitration agreements according to their terms," *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013).

"In deciding whether to grant a motion to compel arbitration, courts must resolve [1] whether the parties are bound by a given arbitration clause and [2] whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Beltran v. AuPairCare*, 907 F.3d 1240, 1250 (10th Cir. 2018) (internal quotation marks omitted). If both elements are met, the court must "rigorously enforce" the terms of the arbitration agreement, resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Sanchez v. Nitro-Lift Techs.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014).

In interpreting the validity and scope of the arbitration clause invoked by Comcast here, the court applies principles of contract law as recognized by Utah, the State where the parties allegedly agreed to the clause. *See Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016); Compl. ¶¶ 4–5, 17, 25–26. As explained below, the court finds that Comcast and Mr. Baker did enter a binding agreement to arbitrate that applies to claims of the particular type raised by Mr. Baker here. The court thus must rigorously enforce the agreement according to its terms.

### A.

Under Utah law, a binding contract is formed if there is mutual assent between the parties supported by consideration. *See John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207–08 (Utah 1987). The Supreme Court of Utah has held that mutual assent is present when the parties voluntarily and knowingly sign an agreement, *id.*, and that consideration exists when the promise in the alleged contract is bargained for or made in exchange for something else, *see Copper State Leasing Co. v. Blacker Appliance & Furniture Co.*, 770 P.2d 88, 91 (Utah 1988).

Mr. Baker claims that he never saw—let alone agreed to—the Service Agreement or the arbitration clause contained in that agreement. *See* Dkt. No. 16 at 2. But Mr. Baker admits that he voluntarily and knowingly signed the Service Order on July 11, 2016, when he purchased

XFINITY Extreme Triple Play. *See* Compl. ¶¶ 12, 17, 20–21, 26. And the Service Order itself displays Plaintiff's signature. *See* Dkt. No. 7-2. As noted above, the Service Order also states that "[t]he services ordered are subject to the terms and conditions . . . in Comcast's Agreement for Residential Services terms as *provided to me at installation or otherwise*, *which terms I accept* by signing or by use of Comcast services." *Id*. (emphasis added). By signing this document, Mr. Baker thus indicated both that he had received the Service Agreement and that he agreed to its terms. Given this signed, express, and contemporaneous acknowledgment of receipt, the court will not credit Mr. Baker's current claim—made years later and in view of litigation—that he never received this agreement. *Cf. Century 21 All Western Real Estate and Inv. v. Webb*, 645 P.2d 52, 55 (Utah 1982).

At the time Mr. Baker signed the Service Order, the Subscriber Agreement contained an arbitration provision. *See* Dkt. No. 20 at 61–62 § 13. This provision was not buried in fine print; the very first page of the Agreement stated in bold, underlined, and fully capitalized letters that "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S)**." Dkt. No. 20 at 47. In light of Mr. Baker's signature on the Service Order and the clear text of that Order and the Subscriber Agreement, the Court rejects Mr. Baker's claim that he never saw or agreed to the arbitration clause.[1]

---

[1] Relying on a declaration regarding its routine practices, *see* Dkt. No. 20 ¶ 3, Comcast argues that Mr. Baker also received a copy of the Subscriber Agreement when he began service with Comcast in 2015. *See* Dkt. No. 14 at 10. In addition, Comcast notes that a copy of the Subscriber Agreement was included in a bill sent to Mr. Baker in 2017, and that Mr. Baker must have received the Subscriber Agreement then because he paid the bill. *See* Dkt. No. 19-1 at 5 ¶ 9. In both 2015 and 2017, the Subscriber Agreement contained the arbitration clause. *See* Dkt. No. 20 at 3 ¶ 6, 8; Dkt. No. 20 at 31 § 13; Dkt. No. 14-1 at 31 § 13. Given Mr. Baker's signed

Mr. Baker also argues that the arbitration clause is not enforceable because it was imposed unilaterally by Comcast and was not supported by consideration. *See* Dkt. No. 16 at 5–6, 8–10. But the arbitration clause was not imposed unilaterally. To the contrary, as demonstrated above, Mr. Baker expressly agreed to the Subscriber Agreement—which included the arbitration clause—when he signed the 2016 Service Order. Although Mr. Baker claims that the arbitration provision was not added to the Subscriber Agreement until 2017, *see id*. at 5, a review of the relevant versions of the Subscriber Agreement demonstrates otherwise. The Subscriber Agreement in effect when Mr. Baker signed the 2016 Service Order contained an arbitration clause, and that clause is materially the same as the current version (as well as the version at the time Mr. Baker first became a Comcast subscriber in 2015 and the version sent to Mr. Baker in 2017 with his bill). *See* Dkt. No. 20 at 31 § 13; Dkt. No. 20 at 61 § 13; Dkt. No. 14-1 at 31 § 13; *supra* n.1

In addition, when Mr. Baker signed the 2016 Service Order and agreed to the Service Agreement, including the arbitration clause, the agreement was plainly supported by consideration: in exchange for signing the Service Order and agreeing to the terms of the Subscriber Agreement, Mr. Baker received XFINITY Extreme Triple Play, which he concedes was "an improvement" over his previous service. Compl. ¶ 21. Because the arbitration clause

---

acknowledgment in 2016 that he had received the Subscriber Agreement, the court need not decide whether Mr. Baker also received the Agreement in 2015, 2017, or both.

Comcast also argues that Mr. Baker accepted the terms of the Subscriber Agreement, including the arbitration clause, through his continued use of Comcast's services. *See* Dkt. No. 14 at 11–12. In view of Mr. Baker's explicit acceptance of the terms of this agreement when he signed the 2016 Service Order, the court need not decide whether Mr. Baker's continued use of Comcast's services, standing alone, would suffice to establish his acceptance of the terms of the Subscriber Agreement.

was not imposed unilaterally and was supported by consideration, the court rejects Mr. Baker's argument that the clause is "null and void." Compl. ¶ 35.[2]

## B.

The court also finds that the arbitration provision in the Subscriber Agreement requires arbitration of the "particular type of controversy" raised by Mr. Baker here. *Beltran*, 907 F.3d at 1250. Under that provision, the Parties agreed to arbitrate "[a]ny Dispute involving you [*i.e.*, Mr. Baker] and Comcast." Dkt. No. 20 at 61 § 13(a). "Dispute" is defined broadly to include "any claim or controversy related to us or our relationship, including but not limited to any and all: (1) claims for relief and theories of liability, whether based in contract. . . or otherwise; . . . and (4) claims that are the subject of purported class action litigation in which you are not a member of a certified class." Dkt. No. 20 at 61–62 § 13(b). There can be no doubt that the plain terms of the agreement thus cover the claims for breach of contract brought by Mr. Baker on behalf of himself and the proposed class.

## C.

The court must therefore "rigorously enforce" the arbitration clause "according to [its] terms." *Sanchez*, 762 F.3d at 1146. The agreement requires that "[a]ny Dispute involving you and Comcast shall be resolved through individual arbitration." Dkt. No. 20 at 61 § 13(a). It further provides that "[t]here shall be no right or authority for any claims to be arbitrated or litigated on a class action, joint or consolidated basis or on bases involving claims brought in a

---

[2] The only arguments that Mr. Baker has offered in support of his assertion that the arbitration clause is "null and void" are that the clause was imposed unilaterally and was not supported by consideration. The court will not consider other potential bases of invalidity not raised by Mr. Baker. *Cf.* 9 U.S.C. § 2 (providing that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

purported representative capacity on behalf of the general public (such as a private attorney general), other subscribers, or other persons." Dkt. No. 20 at 61 § 13 (h). The arbitration clause thus requires that Mr. Baker's claims be arbitrated on an individual basis.

\* \* \*

For the foregoing reasons, Defendant Comcast's motion to compel arbitration is **GRANTED**. Plaintiff's action is **DISMISSED WITH PREJUDICE**.[3]

**IT IS SO ORDERED.**

DATED this 10th day of July, 2020.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge

---

[3] Although courts frequently dismiss actions with prejudice after granting motions to compel, the text and structure of the Federal Arbitration Act suggest that a stay pending arbitration may be the proper disposition in this procedural posture. *See* 9 U.S.C. § 3; *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (explaining that an agreement to arbitrate "is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4"); *cf*. 9 U.S.C. § 16. And the Tenth Circuit has vacated an "order of dismissal" and remanded "for entry of a stay pending arbitration in accordance with 9 U.S.C. § 3" when the party seeking to compel arbitration had requested such a stay. *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 954–56 (10th Cir. 1994); *see also Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 87 n.2 (2000) (reserving question whether district court should have "entered a stay [pending arbitration] instead of a dismissal" when a party had requested a stay). In this case, Mr. Baker has not argued that dismissal with prejudice is improper if the motion to compel is granted, and neither party has requested a stay pending arbitration. *See* 9 U.S.C. § 3 (mandating stay pending arbitration "*on application of one of the parties*") (emphasis added). The court accordingly dismisses Mr. Baker's action with prejudice without resolving whether a stay pending arbitration would have been a more appropriate disposition.